UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICE HUTSON, et al., Plaintiffs, v. AMCO INSURANCE CO INC, et al., Defendants. | Case No. 19-cv-03667-EMC  **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS SECOND AMENDED COMPLAINT**  Docket No. 30-31 |

Plaintiffs are the heirs of a woman named Betty Hutson. They have sued two companies: AMCO Insurance Co. and Wells Fargo Bank, NA. Previously, AMCO answered the original complaint as well as the first amended complaint ("FAC"). *See* Docket No. 1-3 (answer); Docket No. 15 (answer). Wells moved to dismiss the FAC. The Court granted Wells's motion but permitted the filing of a second amended complaint ("SAC"). Docket No. 18 (minutes). After Plaintiffs filed the SAC, both AMCO and Wells moved for dismissal. These are the motions currently pending before the Court.[1]

Having considered the parties' briefs and accompanying submissions,[2] as well as the oral argument of counsel, the Court hereby **GRANTS** in part and **DENIES** in part both motions to dismiss.

---

[1] Plaintiffs did not timely file their opposition briefs. Although the Court does not condone this failure, Defendants do not appear to have been prejudiced as a result. The Court therefore shall consider the opposition briefs but warns Plaintiffs that failure to comply with the Civil Local Rules in the future may result in sanctions.

[2] The parties' briefs include the supplemental briefs requested by the Court. The Court notes that Plaintiffs exceeded the scope of the supplemental brief (*i.e.*, subject matter) permitted by the Court. Similar to above, the Court warns Plaintiffs that failure to comply with Court orders in the future may result in sanctions.

## I. FACTUAL & PROCEDURAL BACKGROUND

In the SAC, Plaintiffs allege as follows.

Betty Hutson was married to Tommy Gremillion. The two owned certain real property, located in Richmond, California, as joint tenants with the right of survivorship. *See* SAC ¶ 7. The property was protected by a homeowners' insurance policy,[3] which was obtained "through an insurance agent" whose "identity is currently unknown." SAC ¶¶ 8-9.

In July 2006, Mr. Gremillion died, thus "leaving the [real] property to vest in his wife, Betty Hutson." SAC ¶ 10.

In May 2007, Betty Hutson obtained a loan from World Savings Bank (which Wells later acquired), with the loan being secured by a deed of trust on the real property. *See* Wells's RJN, Ex. A (deed of trust). The deed of trust required that Ms. Hutson "obtain and maintain hazard insurance" which could cover, *inter alia*, "loss or damage caused by fire." Wells's RJN, Ex. D (Deed of Trust at 5). The deed of trust also required that the insurance policy "include what is known as a Standard Mortgagee Clause to protect Lender." Wells's RJN, Ex. D (Deed of Trust at 5) (emphasis omitted). Finally, the deed of trust included the following provision:

> The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

Well's RJN, Ex. D (Deed of Trust at 6).[4]

---

[3] "Although it is frequently said that property is insured, this is inaccurate. A property insurance policy is not an insurance of a specific thing without regard to ownership, but is a special agreement of indemnity with the person insured against such loss or damage as he or she may sustain." 2 Witkin, Summ. of Cal. Law 11th Ins. § 107; *see also Russell v. Williams*, 58 Cal. 2d 487, 490 (1962) (stating that "[i]t is a principle of long standing that a policy of fire insurance does not insure the property covered thereby, but is a personal contract indemnifying the insured against loss resulting from the destruction of or damage to his interest in that property").

[4] To the extent the provision indicates that Wells has the above authority "regardless of any

2

In July 2007, the insurance agent transferred her entire book of business to AMCO, and AMCO bought, *inter alia*, the policy that covered the real property. *See* SAC ¶¶ 15, 20. According to Plaintiffs, at the time that AMCO bought the policy, it knew – or at least should have known – that Mr. Gremillion was dead. *See* SAC ¶¶ 20, 51.

In September 2007, AMCO issued its own insurance policy for the real property at issue. The named insured on the policy was Mr. Gremillion, even though AMCO allegedly knew he had died. *See* SAC ¶ 18; *see also* AMCO Mot., Ex. A (insurance policy in effect from September 2016 to 2017, Bates stamp AMCO 00015) (listing named insured as Mr. Gremillion). It appears the policy reflected Wells was the mortgagee with respect to the real property at issue. *See* AMCO Mot., Ex. A (insurance policy in effect from September 2016 to 2017, Bates stamp AMCO 00015) (identifying Wells as the mortgage loss payee); *see also* SAC ¶ 16 (alleging that the insurance agent told AMCO that Wells was the mortgagee).

Betty Hutson made payments on the policy for many years. *See* SAC ¶ 23. According to Plaintiffs, Betty Hutson did not know about the error in the policy with respect to Mr. Gremillion's name because she was not directly billed for the insurance; rather, "all billing statements were sent to Wells Fargo" as a part of "'direct mortgage' billing."[5] SAC ¶ 16.

In October 2014, Betty Hutson died. *See* SAC ¶ 23. AMCO allegedly knew or should have known that Betty Hutson died in 2014 but did not change the name on the policy. *See* SAC ¶ 53.

In February 2017, several years after Betty Hutson's death, there was a fire on the real property at issue. The fire consumed part of the house and caused extensive damage. *See* SAC ¶ 24. Also, at the time of the fire, the home was used "as a board and care facility for several

---

impairment or lack of impairment of security," that is (as Wells points out) consistent with California Civil Code § 2924.7(b). *See* Cal. Civ. Code § 2924.7(b) ("The provisions of any deed of trust or mortgage on real property which authorize any . . . mortgage . . . to receive and control the disbursement of the proceeds of any policy of fire, flood, or other hazard insurance respecting the property shall be enforceable whether or not impairment of the security interest in the property has resulted from the event that caused the proceeds of the insurance policy to become payable.").

[5] Plaintiffs do not address in the SAC whether, over the years, Betty Hutson ever received a declarations page for the insurance policy bearing Mr. Gremillion's name.

3

disabled persons," and the boarders "lost significant personal property." SAC ¶¶ 44-45. "The residents of the board and care each lost significant personal property none of which either Defendant has agreed to pay." SAC ¶ 45:

Several days after the fire, AMCO claimed that it learned for the first time that Mr. Gremillion had been dead for 10 years and Betty Hutson for 3 years. *See* SAC ¶ 25. AMCO thereafter issued a notice of cancellation for the policy. *See* SAC ¶ 26.

When Plaintiffs contacted AMCO about coverage for the loss related to the fire, AMCO initially told them that "there was no coverage at all." SAC ¶ 29. After Plaintiffs obtained legal counsel, AMCO "finally admitted the home was covered, but denied coverage for any [personal] property loss or the loss of use of the [real] property." SAC ¶ 30; *see also* SAC ¶ 59 (alleging that AMCO refused to pay for loss of personal property and business income loss). In addition, AMCO claimed that the real property had a low value and proposed a low cost for repair. *See* SAC ¶ 31. Moreover, AMCO refused to communicate with Plaintiffs or their counsel and claimed instead that it was working directly with Wells, even though Wells had not actually opened a formal claim. *See* SAC ¶¶ 33-34. According to Plaintiffs, after Wells opened a formal claim, AMCO "unreasonably delayed the investigation and issuing of the construction check." SAC ¶ 45; *see also* SAC ¶ 54 (alleging that AMCO "delayed in determining coverage for the loss").

As for Wells, it forced Plaintiffs' contractor that was carrying out the repairs "to work on a very limited scope based on the estimate prepared by AMCO." SAC ¶ 36. The true cost of repair was greater. *See* SAC ¶ 37. Wells refused to work with Plaintiffs' counsel "to secure a more realistic scope based on the extensive damage to the home." SAC ¶ 41. In addition, Wells still has not paid for all of the repair work that it signed off on. *See* SAC ¶ 43. Finally, Wells delayed in getting disbursed funds to Plaintiffs and/or the contractor "so that it took over a year [for] construction to be completed." SAC ¶ 46.

Based on, *inter alia*, the above allegations, Plaintiffs assert the following causes of action.

(1) Negligence.

(2) Breach of contract (against AMCO only).

(3) Bad faith (against AMCO only).

4

1  (4) Unjust enrichment (against AMCO only).

2  (5) Breach of fiduciary duty (against Wells only).

3  (6) Intentional and negligent misrepresentation (against AMCO only).

## II. DISCUSSION

### A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted).

### B. Wells's Motion to Dismiss

Plaintiffs have asserted two claims against Wells: (1) breach of fiduciary duty and (2) negligence. The SAC is not a model of clarity in identifying what conduct Wells engaged in that gave rise to the two causes of action. At the hearing, however, Plaintiffs narrowed their claims to the following factual predicate: Wells approved of $87,000 of work on the dwelling but then never paid for the work. *See* SAC ¶ 43 (alleging that, "[e]ven though Wells Fargo supervised and

ultimately signed off on the repairs, over $87,000 of work that Wells Fargo has already signed off on, and the City Inspector approved, remains unpaid for"). Plaintiffs provided additional clarification at the hearing – *i.e.*, that Plaintiffs and Wells met, Wells approved of $87,000 in repairs, but then Wells never passed on to AMCO the claim for $87,000.[6]

1. Breach of Fiduciary Duty

"'The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, breach of fiduciary duty, and damages.'" *Filbin v. Fitzgerald*, 211 Cal. App. 4th 154, 174 (2012). In the instant case, Wells argues that Plaintiffs have failed to adequately plead the existence of a fiduciary relationship. According to Wells, it had no special relationship with Betty Hutson; rather, the two simply had an arms' length, lender-borrower relationship.

"Whether a fiduciary duty exists is generally a question of law" (as opposed to "[w]hether the defendant breached that duty towards the plaintiff [which] is a question of fact"). *Marzec v. Public Employees' Ret. Sys.*, 236 Cal. App. 4th 889, 915 (2015).

> [A] fiduciary relationship is "'any relation existing between parties to a transaction wherein one of the parties is in duty bound to act with the utmost good faith for the benefit of the other party. Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, *if he voluntarily accepts or assumes to accept the confidence*, can take no advantage from his acts relating to the interest of the other party without the latter's knowledge or consent. …'"
>
> [Notably], "'[b]efore a person can be charged with a fiduciary

---

[6] Presumably, Plaintiffs narrowed their claims to this specific factual predicate because other factual predicates were problematic. For example:

- Plaintiffs suggested in the SAC that AMCO should have advocated on behalf of Plaintiffs to get more repairs. But the SAC does not provide any specifics as to what repairs Plaintiffs wanted that Wells unreasonably refused to pursue.
- Similarly, Plaintiffs suggested in the SAC that Wells should have changed the name on the insurance policy to reflect that Betty Hutson was the owner (Mr. Gremillion having died). But the SAC does not contain any allegations indicating how Wells knew or should have known that Mr. Gremillion was dead.
- Finally, Plaintiffs suggested that Wells delayed in passing on checks received from AMCO to cover the cost of repairs, but this claim is conclusorily pled, providing no information as to when Wells received checks and when it eventually passed them over to Plaintiffs.

6

> obligation, he must either *knowingly undertake to act on behalf and for the benefit of another*, or must enter into a relationship which imposes that undertaking as a matter of law.'"

*Cleveland v. Johnson*, 209 Cal. App. 4th 1315, 1338 (2012) (emphasis added).

In addition, as a general matter,

> [t]he relationship between a lending institution and its borrower-client is not fiduciary in nature. A commercial lender is entitled to pursue its own economic interests in a loan transaction. This right is inconsistent with the obligations of a fiduciary which require that the fiduciary knowingly agree to subordinate its interests to act on behalf of and for the benefit of another.

*Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal. App. 3d 1089, 1093 n.1 (1991). Thus, "absent special circumstances . . . a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and lender." *Oaks Mgmt. Corp. v. Superior Court*, 145 Cal. App. 4th 453, 466 (2006); *cf. Nymark*, 231 Cal. App. 3d at 1096 (stating that, "[a]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money").

Given the applicable law, Plaintiffs' claim for breach of fiduciary duty fails. The relationship between Wells and Betty Huston was lender-borrower (mortgagee-mortgagor). Thus, Plaintiffs must show that there are special circumstances giving rise to a fiduciary relationship, such as Wells deliberately undertaking to act on behalf and for the benefit of Betty Hutson (as opposed to itself as the lender).

Plaintiffs have failed to make allegations suggesting a fiduciary relationship. For example, Plaintiffs allege that, "[b]y entering into the joint venture in the mortgage, Wells Fargo was in the position of a fiduciary to [Betty Hutson]." SAC ¶ 64. But this allegation clearly runs against well-established California law that a lender-borrower relationship in and of itself is not enough to establish a fiduciary relationship. Moreover, the deed of trust makes clear that Wells's interest was to protect itself and not Betty Hutson. *See* Well's RJN, Ex. D (Deed of Trust at 6) (providing that insurance proceeds "will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion").

Plaintiffs also assert there was a fiduciary relationship because the AMCO insurance policy included a lender's loss payable endorsement, which essentially created a contractual relationship between AMCO and Wells, and Betty Hutson was the intended third-party beneficiary of that contract. In *Home Savings of America, F.S.B. v. Continental Insurance Co.*, 87 Cal. App. 4th 835 (2001), a California state court explained that there are two different kinds of lender's loss payable endorsements:

> The simple or open loss payable clause was first added to insurance policies with the intention of protecting the secured creditor. The simple or open "loss payable clause[] directs the insurer to pay the proceeds of the policy to the lienholder, as its interest may appear, before the insured receives payment on the policy. Under this type of policy, the lienholder is simply an appointee to receive the insurance fund to the extent of its interest, and its right of recovery is no greater than the right of the insured. There is no privity of contract between the two parties because there is no consideration given by the lienholder to the insured. Accordingly, a breach of the conditions of the policy by the insured would prevent recovery by the lienholder."
>
> To afford even greater protection to the secured creditor, it became customary to modify the simple or open loss payable clause "to provide that the lender's coverage could not be forfeited by the act or default of any other person. This modified provision [originally known as a union or New York clause] came to be known as a standard mortgage clause." . . .
>
> Under the standard loss payable clause, "a lienholder is not subject to the exclusions available to the insurer against the insured because an independent or separate contract of insurance exists between the lienholder and the insurer. In other words, there are two contracts of insurance within the policy – one with the lienholder and the insurer and the other with the insured and the insurer."
>
> The typical consideration given by the lienholder in return for obtaining a standard clause is the lienholder's promise to pay premiums on demand. "The union, standard or New York clause provides that the owner/mortgagor's acts or neglect will not invalidate the insurance provided that if the owner/mortgagor fails to pay premiums due, the lienholder/mortgagee shall on demand pay the premiums. In return for incurring premium liability, the lienholder/mortgagee is freed from the policy defenses which the insured might have against the owner/mortgagor. The union, standard or New York loss payable clause is then an agreement between the lienholder/mortgagee and the insurer independent of the policy contract between the owner/mortgagor and the insurer."

*Id.* at 841-43.

AMCO has submitted to the Court a copy of the AMCO insurance policy in place at the

time of the fire, and Plaintiffs do not dispute that it is a true and correct copy. That policy does contain a "Lender's Loss Payable Endorsement." AMCO Mot., Ex. A (insurance policy in effect from September 2016 to 2017, Bates stamp AMCO 00050). The endorsement includes both a simple/open loss payable clause and a standard loss payable clause. *See* AMCO Mot., Ex. A (insurance policy in effect from September 2016 to 2017, Bates stamp AMCO 00050). Because of the standard clause, there is a separate and independent contract between AMCO and Wells, as Plaintiffs contend.[7] That specific contract is for the benefit of Wells, as indicated by the consideration for the agreement – *i.e.*, Wells's promising to step in and pay premiums. There is nothing in the endorsement suggesting that Betty Hutson (or even Mr. Gremillion) as the asserted insured was an intended third-party beneficiary with respect to the AMCO-Wells contract. The contract provision is intended to benefit Wells, not any insured. *See generally Loduca v. Polyzos*, 153 Cal. App. 4th 334, 341 (2007) ("[A] party not named in the contract may qualify as a beneficiary under it where the contracting parties must have intended to benefit the unnamed party and the agreement reflects that intent.").

Accordingly, the Court dismisses the claim for breach of fiduciary duty. The dismissal is with prejudice as nothing in the SAC nor the opposition brief suggests a potentially viable claim.

2. Negligence

> "The elements of negligence are: (1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)."

*McGarry v. Sax*, 158 Cal. App. 4th 983, 994 (2008). Wells challenges the adequacy of Plaintiffs' allegations on legal duty.

"The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Id.*

---

[7] In its papers, AMCO seems to concede that there was a contract between it and Wells based on the endorsement. *See* AMCO Reply at 4 ("Because of [the] separate contract of insurance, AMCO paid $161,586.51 to Wells Fargo as the cost of repair of the damaged residence.").

9

> The determination whether in a specific case the defendant will be held liable to a third person not in privity is a matter of policy and involves the balancing of various factors, among which are [1] the extent to which the transaction was intended to affect the plaintiff, [2] the foreseeability of harm to him, [3] the degree of certainty that the plaintiff suffered injury, [4] the closeness of the connection between the defendant's conduct and the injury suffered, [5] the moral blame attached to the defendant's conduct, and [6] the policy of preventing future harm.

*Biakanja v. Irving*, 49 Cal. 2d 647, 650 (1958).

As noted above, Plaintiffs have now narrowed their negligence claim to the following factual predicate: that Plaintiffs and Wells met, Wells approved of $87,000 in repairs, but then Wells never passed on to AMCO the claim for $87,000. Here, Plaintiffs have made sufficient allegations in support of a legal duty with respect to this factual predicate. The alleged interaction between Plaintiffs and Wells was intended to affect Plaintiffs; harm to Plaintiffs was foreseeable if Wells did not submit the claim; and there is a close connection between Wells's failure to act and the alleged injury suffered. Plaintiffs have sufficiently alleged facts which could establish a duty.

The Court therefore denies the motion to dismiss the negligence claim. To the extent Wells argues that certain damages are not recoverable based on the alleged misconduct, that is a question of fact that cannot be resolved at this stage of the proceedings.

C.     <u>AMCO's Motion to Dismiss</u>

In its motion, AMCO argues for dismissal because Mr. Gremillion was the named insured on the policy but, because Mr. Gremillion was dead at the time AMCO issued its own policy in 2007,[8] a contract could not have been formed.

As an initial matter, the Court notes, that per the SAC, AMCO knew or should have known at the time it issued its own policy that Mr. Gremillion was dead. But because this allegation is conclusorily pled – with no factual allegations indicating how AMCO knew or should have known

---

[8] As noted above, the SAC indicates that, prior to AMCO issuing its own policy in 2007, Mr. Gremillion and/or Betty Hutson had insurance through a different company and AMCO bought that policy. Because AMCO issued its own policy in 2007, Plaintiffs' reference, in their supplemental brief, to California Insurance Code § 304 is not on point. *See* Cal. Ins. Code § 304 (providing that, "[i]n the case of partners, joint owners, or owners in common, who are jointly insured, a transfer of interest by one to another thereof does not avoid insurance, even though it has been agreed that the insurance shall cease upon an alienation of the subject insured").

10

that Mr. Gremillion was dead – the Court gives it no credit.[9] That being the case, the Court agrees with AMCO that the allegations in the SAC, on their face, establish that no contract was ever formed between Mr. Gremillion and AMCO.[10] Consequently, Plaintiffs have failed to state a claim for breach of contract or bad faith, both of which are dependent on there being an insurance contract. Plaintiffs' negligence claim – as pled – is also dependent on there being an insurance contract and therefore that claim is not adequately pled either. *See* SAC ¶ 54 (alleging negligence based on refusal to deal with Plaintiffs, misrepresenting that AMCO was working with Wells when it was not, and not correcting the name of the insured on the policy).

Plaintiffs protest that they only made the allegation that AMCO issued its own policy in 2007 on information and belief – *i.e.*, AMCO gave them this information but it is not clear to them that the information is necessarily correct. Plaintiffs add that they have difficulty in understanding how AMCO could have issued a policy to Mr. Gremillion in 2007 when he had already passed and therefore could not have signed any policy.[11] However, Plaintiffs have not pointed to anything suggesting that AMCO and Mr. Gremillion had an insurance contract at any point prior to his death. Plaintiffs' assertion that there was one is speculative.[12]

Accordingly, dismissal of the breach of contract, bad faith, and negligence claims is

---

[9] The Court acknowledges that, in their supplemental brief, Plaintiffs argue that, "when AMCO bought the initial book of business from the Agent, it was at least on inquiry notice why the name Gremillion appeared on the Policy when the name on the deed was Betty Hutson." Pls.' Supp. Br. at 6. However, Plaintiffs have not explained how AMCO would have known that Betty Hutson's name was on the deed of trust; there is no allegation that AMCO as the insurer would have received a copy of the deed of trust.

[10] In their supplemental brief, Plaintiffs contend that there is nothing wrong with Betty Hutson "purchasing insurance under Tommy Gremillion's name" because "most insurance companies allow people to purchase insurance for someone else." Pls.' Supp. Br. at 3. But Plaintiffs have cited no authority that allows an individual to purchase insurance for another individual when the latter is already dead.

[11] For purposes of this order, the Court assumes that a homeowners' insurance policy cannot be issued without the insured signing the insurance contract.

[12] Plaintiffs make no affirmative claim for reformation of the contract. Any claim for reformation would be problematic. *See* Cal. Civ. Code § 3399 ("When, through fraud or a mutual mistake of the parties, or a *mistake of one party, which the other at the time knew or suspected*, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value.") (emphasis added).

11

appropriate. However, the Court shall dismiss these claims without prejudice. As discussed below, Plaintiffs have a viable claim for unjust enrichment and, in litigating this claim, it is fair for Plaintiffs to obtain from AMCO, as part of discovery, any and all insurance policies related to Mr. Gremillion, Betty Hutson, and/or the real property at issue. This would include the very first insurance policy issued by AMCO plus renewal policies, as well as any insurance policy issued by another company but which AMCO purchased. If Plaintiffs learn from this discovery that AMCO specifically and Mr. Gremillion had an insurance contract before he died, then Plaintiffs may have a basis to ask for leave to amend, *i.e.*, to re-introduce the claims for breach of contract, bad faith, and negligence.[13]

Besides the claims for breach of contract, bad faith, and negligence, Plaintiffs have asserted claims for unjust enrichment and intentional/negligent misrepresentation. The Court declines to dismiss the unjust enrichment claim because, if no contract was ever formed between Mr. Gremillion and AMCO, then arguably AMCO should have to disgorge the insurance premiums that Betty Hutson and/or her heirs paid. At the hearing, AMCO suggested that it should not have to give up any premiums because Plaintiffs still obtained a benefit that exceeded the amount of the premiums (*i.e.*, repairs were made to the dwelling because of the separate contract between AMCO and Wells), but that issue (and, *e.g.*, whether there should be some kind of offset or proration) is not properly before the Court at this time.

As for the intentional/negligent misrepresentation claim, here, the Court dismisses, and with prejudice. According to Plaintiffs, AMCO misrepresented that the insurance policy did not cover personal property loss because no named insured lived on the premises on the date of the fire when, in fact, "insured" is defined in the policy to include the adult children of the homeowner living on the premises. *See* SAC ¶ 70. Plaintiffs also claim that AMCO suppressed the fact that the lender's loss payable endorsement did not bar AMCO from communicating directly with the

---

[13] If there was at some point a valid contract between AMCO and Mr. Gremillion, California Insurance Code § 303 might come into play. *See* 2 Witkin, Summ. of Cal. Law 11th Ins. § 107 (noting that, under § 303, "a change of interest by will or succession on the death of the insured [does not] avoid the insurance; the insured's interest in the insurance passes to the person taking the interest in the insured subject matter"). Absent such a predicate, however, the Court need not address its scope and applicability.

12

insured (*i.e.*, AMCO had claimed it could only communicate with Wells as the lender). *See* SAC ¶ 73. Neither of these factual predicates is sufficient to support a claim for intentional/negligent misrepresentation. For both intentional and negligent misrepresentation, there must be reasonable reliance on the part of the plaintiff. *See Zakaria v. Gerber Prods. Co.*, No. LA CV15-00200 JAK (Ex), 2016 U.S. Dist. LEXIS 184861, at *39 (C.D. Cal. Mar. 23, 2016) (noting that reasonable reliance is an element of both intentional and negligent misrepresentation). Here, even if AMCO made a misrepresentation about the term "insured," Plaintiffs could not have reasonably relied on the misrepresentation because the insurance policy on its face provided the definition of the term "insured." As for Plaintiffs' contention that AMCO suppressed information related to the lender's loss payable endorsement, that claim is similarly not viable because the endorsement was available to Plaintiffs as part of the policy. The Court dismisses with prejudice because nothing in Plaintiffs' opposition indicates that amendment on the misrepresentation claim would not be futile.

### III.     CONCLUSION

For the foregoing reasons, the Court grants in part and denied in part both motions to dismiss. More specifically:

- The claim for breach of fiduciary duty against Wells is dismissed with prejudice.
- The negligence claim against Wells is not dismissed. However, the claim is limited to the factual predicate identified above (*i.e.*, that Wells failed to pass on to AMCO a claim for $87,000 in repairs that it had approved).
- The claims for breach of contract, bad faith, and negligence against AMCO are dismissed but without prejudice. Plaintiffs are not precluded from moving for leave to amend if they learn through discovery that an insurance contract existed between AMCO specifically and Mr. Gremillion prior to his death.
- The claim for unjust enrichment against AMCO is not dismissed.
- The claim for intentional/negligent misrepresentation against AMCO is dismissed with prejudice.

As for Plaintiffs' motion for leave to amend, it is moot in light of the Court's rulings above. No further amendments are permitted at this time, except, as noted above, Plaintiffs may

13

move for leave to amend if they learn through discovery that an insurance contract existed between AMCO specifically and Mr. Gremillion prior to his death.

This order disposes of Docket Nos. 30 and 31.

**IT IS SO ORDERED**.

Dated: January 9, 2020

_____
EDWARD M. CHEN
United States District Judge